**C.W. BOLLINGER INSURANCE COMPANY, et al., Petitioners,**

v.

**Joseph W. FISH, Respondent.**

**No. 14425.**

Court of Appeals of Texas, Austin.

Oct. 23, 1985.

David M. Ward, Wilson, Grosenheider & Burns, Austin, for petitioners.

Karl O. Bayer, Pluymen & Bayer, Austin, for respondent.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

POWERS, Justice.

The defendants, C.W. Bollinger Insurance Company and Academy Life Insurance Company, failed to appear and answer in a suit brought against them by the plaintiff, Joseph W. Fish. On the defendants' default, the trial court rendered a money judgment against them and in favor of the plaintiff. The defendants petition now for writ of error, contending the trial court lacked *in personam* jurisdiction owing to deficiencies in the substitute service upon which the judgment rests. We will grant the writ, reverse the judgment, and remand the cause to the trial court.

### THE CONTROVERSY

In Fish's original petition, he alleged against the defendants several statutory causes of action and a single common-law cause of action. The actions were all founded upon allegations that the defendants were insurers under a contract that obligated them to pay Fish's medical expenses, incurred in an injury to which such insurance coverage applied.

In addition, Fish alleged that each defendant was a "foreign company" incorporated under the laws of another state but "doing business" in the State of Texas. Moreover, Fish averred that each defendant "may be served with process in this case by serving Tom Bond, Commissioner of Insurance, 1110 San Jacinto, Austin, Travis County, Texas 77785." But Fish's petition is *silent* in two key respects: (1) It does not state whether either defendant is *authorized* to do business in Texas; and (2) it does not state whether the Commission is in fact or law an *authorized agent for service* of process. Nevertheless, Fish's petition alleges acts by the defendants which, under three statutes found in the Texas Insurance Code, might possibly empower the Commissioner to accept service of citation so as to bind the defendants to appear and answer in the cause. Before discussing these statutes, however, we shall set forth the general legal rules applicable to the case.

### GENERAL RULES APPLICABLE TO THE CASE

The Texas Rules of Civil Procedure prohibit rendition of judgment against a defendant unless: (1) he appears generally in the cause; (2) he accepts or waives service of citation; or (3) he receives service of citation "as prescribed in these rules, except where otherwise expressly provided by law." Tex.R.Civ.P.Ann. 124 (Supp. 1985). Neither of the first two circumstances is applicable to the case. Nor do we deal with personal service under the rules. Instead, the service relied upon in the present case is substitute service, said to be "expressly provided by law" in the three provisions of the Insurance Code discussed below.

Because Bollinger and Academy seek appellate review by writ of error, claiming a want of personal jurisdiction owing to defects in citation and service by which such jurisdiction was ostensibly acquired, the ultimate question before us is whether the record affirmatively shows on its face a strict compliance with any statute by which such jurisdiction may be acquired through substitute service. *Whitney v. L & L Realty Corporation*, 500 S.W.2d 94 (Tex.1973); *McKanna v. Edgar*, 388 S.W.2d 927 (Tex.1965); *Flynt v. City of Kingsville*, 125 Tex. 510, 82 S.W.2d 934 (1935). In this form of direct attack upon the judgment, no presumptions may be indulged in favor of that judgment. *McKanna v. Edgar, supra.* Moreover, we may not infer from a pleaded conclusion of law any fact necessary to sustain that conclusion. *Campdera v. Reed*, 131 S.W.2d 297

(Tex.Civ.App.1939, writ ref'd). We may not, for example, assume any fact necessary to support Fish's pleaded conclusion that the defendants "may be served with process ... by serving" the Commissioner of Insurance.

 For the record to show affirmatively the establishment of personal jurisdiction through substitute service, there are two basic requirements and the record must show that both were met:

1. Fish's *allegations,* taken as true, must be such as to bring the defendants within the terms of a statute which authorizes substitute service by delivery of citation to the Commissioner of Insurance. *McKanna v. Edgar, supra.* The nature and import of these allegations are specified in *Whitney v. L. & L. Realty Corp., supra:* The plaintiff must allege facts which, if true, would place the defendant under a legal duty to answer in the suit; that is to say, the allegations must be such as to make the defendant "amenable to process" through the procedure specified in a statute which authorizes substitute service in the circumstances alleged.

2. The record must contain *proof* showing compliance with any conditions laid down in the statute which authorizes substitute service in the circumstances alleged. *Whitney v. L & L Realty Corp., supra.*

In the present case, Fish contends his allegations make the defendants amenable to process under any one of three articles of the Insurance Code, all of which expressly permit substitute service on the Commissioner. *See* Tex.Ins.Code Ann. arts. 1.14–1, 3.65, 21.21–1 (1981). We find both Fish's allegations *and* his proof insufficient under these three statutes.

**1.** Curiously, art. 1.14–1 also provides, in § 5, that "[a]ny act of doing an insurance business as set forth in this Article by any unauthorized person or insurer is equivalent to and shall constitute an irrevocable appointment by such person or insurer ... of the Secretary of State ... to be the true and lawful attorney of such person or insurers upon whom may be served all legal process in any action, suit or proceeding in any court...." Section 5 also provides that two copies of the process shall be left "in

## HOLDINGS AND DISCUSSION

We shall discuss Fish's pleading and proof under each of the three statutes. As we shall see, arts. 1.14–1 and 21.21–1 are basically the same in their operation insofar as they permit substitute service on the Commissioner; and, they are distinctly different from art. 3.65.

### Article 1.14–1

Article 1.14–1 of the Code is entitled "Unauthorized Insurance." Its purpose is to provide a means by which the Board of Insurance and the courts of Texas may acquire personal jurisdiction over an insurer doing business in the State *without* having a certificate of authority issued by the Board. Several classifications of possible acts by an insurer, amounting to "doing business" in the State, are listed in § 2 of the statute. When an insurer engages in any such act, without holding a certificate of authority issued by the Board, the very act itself "is equivalent to and shall constitute an irrevocable appointment by such person or insurer ... of the Commissioner of Insurance ... to be the true and lawful attorney of such person or insurer upon whom may be served all legal process in an action, suit or proceeding in any court ..." (§ 4(a)).[1]

A specific *manner* of service of process is prescribed by the statute in the cases to which it applies. Two copies of the process shall be left "in the hands of the office of the Commissioner of Insurance" and the Commissioner's certificate "showing such service and attached to the original or third copy of such process presented to him for that purpose shall be sufficient evidence thereof." (§ 4(b)). The Commissioner is

the hands of the Secretary of State," who shall give a certificate thereof "attached to the original or third copy of such process presented to him for that purpose." The certificate "shall be sufficient evidence" of service on the principal. The section provides, finally, for a method of actual notice and other matters analogous to the method prescribed in § 4 for service upon the Commissioner. Sections 4 and 5 apparently provide, therefore, for alternative agents for service of process issued in judicial proceedings.

directed to mail a copy of the process to the defendant. In addition, the plaintiff's attorney, to make the service effective, must comply with the following procedure:

Such service of process is sufficient, provided notice of such service and a copy of the process are sent within 10 days thereafter by registered mail by plaintiff or plaintiff's attorney to the defendant at the last known principal place of business of the defendant and the defendant's receipt, or receipt issued by the post office with which the letter is registered, showing the name of the sender of the letter and the name and address of the person or insurer to whom the letter is addressed, and the affidavit of the plaintiff or plaintiff's attorney showing compliance herewith are filed with the clerk of the court in which such action is pending on or before the date the defendant is required to appear, or within such further time as the court may allow. (§ 4(c)).

We assume the truth and sufficiency of Fish's allegations that the defendants committed in Texas one or more acts which amounted to "doing business" in the State, as defined in art. 1.14–1, § 2. But Fish failed to allege that the defendants were *not* authorized to do business in the State. He therefore failed to *allege* the essential condition under which those acts were equivalent to an appointment of the Commissioner as defendants' agent for service of process. Moreover, the record fails to show that service of process was *in fact* effectuated in the manner required by art. 1.14–1, as we shall now see.

In purported compliance with art. 1.14–1, Fish's attorney executed and filed in the case the affidavit required in § 4(c). In reference to Academy, the affidavit reads as follows in its substantive parts:

\* \* \* \* \* \*

In accordance with Texas Insurance Code art. 1.14–1 § 4(c), the undersigned hereby certifies as follows:

1. On August 23, 1984, service of process in this case was served on Tom Bond, Commissioner of Insurance, 1110 San Jacinto, Austin, Texas 78786 as the statutory agent for Academy Life Insurance Company.

2. On August 24, 1984, within ten (10) days after such service of process, notice of such service along with a copy of the Process was mailed to defendant, Academy Life Insurance Company, at its last know [sic] address by registered mail, return receipt requested.

3. On August 27, 1984, the return receipt on the notice described above was received by plaintiff and is attached hereto and filed herewith.

Executed this the 31st day of August, 1984.

\* \* \* \* \* \*

Another affidavit, identical in terms and dates, refers to Bollinger where Academy is named above. Each affidavit was filed in the cause on September 4, 1984. The cause was heard on November 2, 1984 and the judgment signed that same day, reciting default by the defendants after due service of citation.

We hold the record insufficient to show strict compliance with the manner of service authorized by art. 1.14–1. We point out the following deficiencies:

1. There is nothing in the affidavits or elsewhere in the record to show that the *two* requisite copies of the "process" were left "in the hands or office of the Commissioner. . . ."

2. There is in the record no certificate by the Commissioner as required by the statute.

3. There is no indication as to the nature or contents of the "process" and the record does not otherwise suggest that it was a citation commanding the defendants' appearance by a specific day. (The "process" referred to in the affidavits was evidently *not* the citations issued and served in *July* 1984 by the constable, as discussed below, for the affidavits refer to a process issued and delivered in *August* 1984.)

4. While the affidavits state that a copy of the "process" and "notice of such ser-

vice" were mailed to each defendant on August 24, 1984, it is not stated in the affidavits or elsewhere in the record that the Commissioner performed the requisite mailing as prescribed by the statute.

5. The notice and copy referred to above were, according to the affidavits and judgment recital, mailed to the "last known address" of each defendant and not to the "last known principal place of business" of the defendants, as the statute requires. *See Verges v. Lomas & Nettleton Financial Corp.*, 642 S.W.2d 820, 821–22 (Tex. App.1982, no writ) (under a similar requirement of Tex.Rev.Civ.Stat.Ann. 2031b, the general long-arm statute, the term "last known address" may not be construed as the equivalent of "home or home office address" as used in the statute).

6. One cannot tell, in the absence of information about the "process" contents, whether it commanded the defendants to appear in the cause by a specified date; hence, although the record shows that the affidavits were filed September 4, 1984, one cannot tell whether they were filed "on or before the date the defendant" was required to appear.

Therefore, we hold that the record does not *affirmatively* show *strict compliance* with the procedure specified in art. 1.14–1 for acquiring personal jurisdiction over a defendant by delivery of citation to the Commissioner, even if that statute had been made applicable to the case by proper allegations.

### Article 21.21–1

Article 21.21–1, entitled "Unauthorized Insurers False Advertising Process Act," is basically the same in its operation as art. 1.14–1 discussed above. Its purpose is to subject to the jurisdiction of the Board of Insurance, and the courts of the State, any insurers that are *not* authorized to transact business in the State, but do so nevertheless, and in their business use "false advertising designed to induce residents of this state to purchase insurance from insurers not authorized to transact business in this state." Like art. 1.14–1, the statute makes the very act, when committed *by such unauthorized insurers,* "equivalent to ... an appointment of ... the Commissioner ... to be [the defendant's] true and lawful attorney, upon whom may be served all ... lawful process ... in any action, suit or proceeding," as stated in § 5(a). The acts specified are listed in § 5(c).

If we assume that Fish's allegations sufficiently aver the unauthorized acts listed in § 5(c), and if we assume the truth of those allegations, it is nevertheless abundantly clear that he failed to allege the first condition essential to authorize substitute service under that statute, for he failed to allege that the defendants were not authorized to do business in the State. As under art. 1.14–1, the acts themselves are *not* equivalent to an appointment of the Commissioner, as agent for service, *unless* the actor committed them while having no certificate of authority to do business in Texas. Fish did not allege this prerequisite to the operation of art. 21.21–1.

Moreover, art. 21.21–1 provides a manner of service that is neither alleged nor affirmatively shown by the record to have occurred. In § 5(b) are listed the prerequisites to service under art. 21.21–1:

1. Any process issued by a court "shall be made by delivering and leaving with the Commissioner of Insurance or some person in apparent charge of his office, two (2) copies thereof."

2. "The Commissioner shall forthwith cause to be mailed by registered mail one (1) of the copies ... to the defendant at its last known principal place of business, and shall keep a record of all ... process so served."

3. "Such service of ... process shall be sufficient provided they shall have been so mailed and the defendant's receipt issued by the post office with which the letter is registered ... and the affidavit of the person mailing such letter showing a compliance herewith are filed with the ... clerk of the court in which such action is pending ... on or before the date the defendant is

required to appear or within such further time as may be allowed."

The record contains no affidavit or other proof of compliance with the manner of service authorized by art. 21.21–1. The affidavits by Fish's attorney refer expressly to art. 1.14–1 and the manner of service authorized therein. If, by reason of the similarity of the two statutes, we consider the affidavits to have reference to art. 21.-21–1 as well, they remain insufficient to prove compliance with that latter statute, for all of the reasons (save one) we have pointed out in our discussion of art. 1.14–1. (It is immaterial that the certificate of the Commissioner is not shown, for art. 21.21–1 requires no such certificate in evidence of compliance with that statute.)

Therefore, we hold that the record does not *affirmatively* show *strict compliance* with the procedure specified in art. 21.21–1 for acquiring personal jurisdiction over a defendant by delivery of citation to the Commissioner, even if that statute had been made applicable to the case by proper allegations.

### Article 3.65

Article 3.65 of the Code, applicable to foreign companies engaged in writing life, health, and accident insurance, is distinctly different in its tenor and effect from articles 1.14–1 and 21.21–1. It reads as follows, the emphasis being ours:

> Each "foreign company" *engaged in* doing or *desiring* to do business in this State shall *file with the Board of Insurance Commissioners* an irrevocable power of attorney, duly executed, constituting and *appointing* the [Commissioner of Insurance] its duly authorized agent and attorney in fact for the purpose of accepting service for it orbeing served with citation in any suit brought against it in any court of this State, by any person ... and *consenting* that the

service of any civil process upon him as its attorney for such purpose in any suit or proceeding shall be taken and held to be valid, *waiving* all claim and right to object to such service or to any error by reason of such service.... Said power of attorney shall be signed by the president or a vice president and the secretary of such company whose signature shall be attested by the seal of the company, and said officer signing the same shall acknowledge its execution before an officer authorized by the laws of *this* State to take acknowledgements. The said power of attorney shall be embodied in, and approved by, a resolution of the board of directors of such company, and a copy of such resolution, duly certified to by the proper officers of said company, shall be filed with the said power of attorney in the office of the Board, and shall be recorded by it in a book kept for that purpose, there to remain a permanent record of said department.

(emphasis added).[2] One observes immediately that art. 3.65 is also vastly different, in its operation, from the two statutes discussed previously.

Article 3.65 contemplates that the Commissioner may become, in a distinctly different manner, an agent for service of process upon a "foreign company" engaged in the insurance business in Texas. While arts. 1.14–1 and 21.21–1, and other statutes like them (see arts. 7.01 and 14.34), simply *designate* the Commissioner an agent or alternative agent for service of process, in all circumstances or in certain prescribed circumstances, art. 3.65 requires that the *company itself* designate the Commissioner its agent for service *through an exercise of the company's power to appoint an agent for the purpose*; that the appointment be made by an instrument in writing and attended by prescribed formalities; that the company consent therein that service upon the Commissioner shall be

---

**2.** Where we have inserted the term "Commissioner of Insurance" in the quotation, the words "Chairman of the Board" are used in art. 3.65. They are also used in art. 3.66 where we have again substituted the term "Commissioner of Insurance." The Legislature, in art. 1.02(e) of the Insurance Code, has directed that references to the "Chairman of the Board" shall be construed as referring to the Commissioner.

binding upon the company; and, that the company waive therein any right to object to service upon the Commissioner. A similar requirement is imposed in the Code upon other kinds of insurers. *See* art. 8.24 (Mexican casualty insurers); art. 9.26 (foreign title insurers), art. 10.24 (foreign fraternal benefit societies); and art. 15.14 (foreign mutual companies). A similar requirement is also imposed by statute upon foreign corporations generally, when they are authorized by the Secretary of State to do business in Texas, coupled with the proviso that if a foreign corporation shall fail to appoint the Secretary of State to be the company's agent for service, that official nevertheless shall become competent for the purpose by reason of the omission. Tex.Bus.Corp.Act Ann. arts. 8.05A(5), 8.08, 8.09, 8.10 (1980 & Supp.1985). There is no similar proviso pertinent to art. 3.65 of the Insurance Code.

■ Service upon the Commissioner under art. 3.65 must also be effectuated in a particular manner calculated to give actual notice to the defendant. In art. 3.66, it is provided that the Commissioner must immediately transmit the citation or a copy thereof "in a letter properly addressed to the general manager or general agent of the company against whom such service is had, if it shall have a general manager or general agent within this State, and if not, then to the home office of the company, and shall forward the same by registered mail, postage prepaid." If such letter is mailed, it shall be presumed until rebutted that "such notice was received by such agent or company in due course of mail...."

We will assume, for the purpose of discussion only, that art. 3.65 applies whether or not a "foreign company" is authorized to do business in the State of Texas by virtue of a certificate issued by the Commissioner. Under the express terms of art. 3.65, the "foreign company" nevertheless *must* execute the requisite power of attorney *if* the Commissioner is ever to be vested with the power of an agent for service of process under that article. That is to say, there is

nothing in art. 3.65 which suggests that the Commissioner is competent to receive service of citation, for a defendant "foreign company," *in the absence* of such appointment by the company. While some Code provisions do make the Commissioner an agent for service of an insurance company, independent of any appointment by the company, art. 3.65 does not. In this connection, we emphasize again that Fish's petition does not even *allege* that the Commissioner was an authorized agent for service upon either defendant.

Fish did allege, however, that the defendants "may be served with process in this case by serving" the Commissioner at a specified address. We may not assume the facts necessary to support this conclusion. *Campdera v. Reed, supra.* And, for the reasons which follow, this too is an insufficient allegation to make the defendants amenable to process under the procedure authorized by art. 3.65.

■ It is uniformly held that a court, reviewing a default judgment attacked directly by the defendant, cannot presume that the defendant made the appointment which he was required by the pertinent statute to make. If the plaintiff's judgment rests upon substitute service made upon an official required to be appointed by the defendant, such as we have here in the case of the Commissioner under art. 3.65, the plaintiff's pleadings must at least *aver* that the appointment was in fact made by the defendant as the statute requires. *Anglo Mexicana de Seguros, S.A. v. Elizondo,* 405 S.W.2d 722, 724–25 (Tex.Civ.App. 1966, writ ref'd n.r.e.) (Tex.Ins.Code Ann. art. 8.24); *Aetna Casualty and Surety Company v. Dobbs,* 416 S.W.2d 869, 872 (Tex.Civ.App.1967, no writ) (Tex.Ins.Code Ann. art. 3.65). This pleading requirement is but a particular application of the general rule that the plaintiff must plead *any* fact set forth in the substitute-service statute as a prerequisite or condition of its effective operation. *McKanna v. Edgar, supra* (failure to allege that defendant was a non-resident "doing business" in Texas essential to operation of general long-arm

statute, Tex.Rev.Civ.Stat.Ann. art. 2031b, §§ 2, 3 (1964) ); *Franecke v. Dolenz,* 668 S.W.2d 481, 482–83 (Tex.App.1984, writ dism'd) (failure to allege that defendant was a "non-resident natural person" over whom a Texas court may acquire personal jurisdiction under same statute).

Moreover, it is uniformly held that the plaintiff must, in addition, establish by some form of proof the facts essential to the operation of the substitute-service statute. *Whitney v. L & L Realty Corp., supra,* at 96 (when judgment rests upon substitute service authorized by Tex.Rev. Civ.Stat.Ann. art. 2031b, *supra,* there must be "a showing in the record," apart from the plaintiff's allegations, "that the Secretary of State forwarded a copy of the process" delivered to that official); *Anglo Mexicana de Seguros, S.A. v. Elizondo, supra* (under art. 8.24 of the Insurance Code, plaintiff must show that Commissioner was *in fact* appointed by defendant to be his agent for service of process, as required by the statute, doing so by proof independent of plaintiff's allegations); *Roland Communications v. Am. Communications Corpus Christi, Inc.,* 662 S.W.2d 145, 146–47 (Tex.App.1983, no writ) (under Tex.Bus.Corp.Act Ann. art. 8.10, plaintiff must not only allege that Secretary of State forwarded a citation delivered to him pursuant to that statute, he must show as well that Secretary of State actually forwarded citation to defendant, which may be shown by that official's certificate).

■ Turning then to the allegations and proof shown in the present record, we hold that both are insufficient for the trial court to have acquired personal jurisdiction over the two defendants, under art. 3.65. Concerning Fish's allegations, we note that he did not allege that the defendants executed a power of attorney appointing the Commissioner of Insurance their agent for service of process. There being nothing in art. 3.65 which suggests that the Commissioner is made competent for the purpose *without* such appointment, Fish was obliged to allege this fact essential to the operation of art. 3.65. He did not and

defendants were not amenable to process under art. 3.65 unless and until they made the requisite appointment. We are forbidden to assume the appointment was made. The allegations are therefore insufficient. *McKanna v. Edgar, supra; Campdera v. Reed, supra; Anglo Mexicana de Seguros, S.A. v. Elizondo, supra; Aetna Casualty and Surety Co. v. Dobbs, supra; Franecke v. Dolenz, supra.*

We turn then to whether the record shows any proof of the fact of service under arts. 3.65, 3.66 of the Insurance Code. The record contains copies of two citations, one issued to each defendant on July 18, 1984, commanding him to appear and answer in the cause. In the case of Academy, the citation reads as follows:

To Academy Life Insurance Company, by serving: Tom Bond, Commissioner of Insurance, 1110 San Jacinto, Austin, Travis County, Texas 78766, Defendant, in the hereinafter styled and numbered cause.

The citation issued to Bollinger is in the same form save for the name of the defendant. The officer's return, executed by a constable, recites execution in the following terms:

Executed at Austin, within the County of Travis, ... on the 23 day of July, 1984, by delivering to the within named Academy Life Insurance Co. by delivering to Tom Bond Commissioner of Insurance of State of Texas as agent for service by delivering to Sonja Richardson, Authorized agent for service at 1110 San Jacinto each, in person, a true copy of this citation together with the accompanying copy of the petition.

The citation issued to Bollinger shows a similarly confusing return in proof of execution:

Executed at Austin, within the County of Travis, ... on the 23 day of July, 1984, by delivering to the within named C.W. Bollinger Insurance Company by delivering to Tom Bond Commissioner of Insurance of State of Texas as agent for service. By delivering to Sonja Richardson his authorized agent for service, each, in person a true copy of this citation togeth-

er with the accompanying copy of the petition.

Concerning the Bollinger citation, we note that the officer did not indorse thereon the "place the process was served ..." as required by Tex.R.Civ.P.Ann. 16. We need not discuss this deficiency for the returns are deficient in more serious particulars.

■ It is evident, of course, that the return on each citation is almost, but not quite, unintelligible. We think the fair implication to be in each instance that process was executed by delivery to Tom Bond, Commissioner of Insurance, by delivery to *his* agent, Sonja Richardson. While arts. 1.14–1 and 21.21–1 permit delivery of citation to a person in the Commissioner's office, that is not the case with art. 3.65, wherein the Commissioner alone is to be designated by the foreign company as its agent for service. To effectuate substitute service on the agent of an authorized agent, so to speak, there must be proof that the "agent" of the authorized agent was empowered to serve as such. *See Mobile Pipe-Dillingham v. Stark*, 468 S.W.2d 552, 554 (Tex.Civ.App.1971, no writ). There is no such showing of Richardson's power.

Concerning the sufficiency of the proof under arts. 3.65, 3.66, in present case, we hold it, too, is insufficient for the following reasons:

1. It is not shown that either defendant appointed the Commissioner his agent for service under the requirements of art. 3.65, or otherwise.

2. It is not shown that Richardson was the agent of the Commissioner, or otherwise the agent of the defendants for substitute service under an appointment by the defendants, had one been alleged or shown.

3. It is not shown that the citation delivered to the Commissioner in July 1984 was mailed as required by art. 3.66.

4. The affidavits by Fish's attorney cannot logically have reference to the *July* citations for they refer only to a "process" issued to each defendant in *August* of the same year. If this fact be ignored, how-

ever, the affidavits are insufficient to show compliance with arts. 3.65, 3.66 because there is no showing in the record that the "process" referred to in each affidavit was a *citation* directing the defendant to appear and answer in the present suit by a particular day; and while the affidavits show that a "process" was mailed to each defendant's "last know [sic] address," this does not constitute compliance with art. 3.66 which requires that such process be mailed to the defendant's general manager or general agent, or to its home office.

We therefore hold that the record does not *affirmatively* show a *strict compliance* with arts. 3.65, 3.66, even if Fish's allegations had been sufficient to allege that they had been made applicable to the case because the defendants had executed the power of attorney required by art. 3.65.

**FISH'S REMAINING CONTENTIONS**

Implicit in Fish's brief on appeal is the following theory: What difference does it make whether his allegations are sufficient to bring the defendants expressly within the terms of any particular statute providing for substitute service? Under each of the three articles of the Insurance Code, arts. 1.14–1, 3.65, and 21.21–1, the same official, the Commissioner of Insurance, may accept substitute service binding upon a defendant and each article applies by its terms to a "foreign company" such as defendants are alleged to be. Further, Fish *did* allege that each defendant "may be served with process ... by serving" the Commissioner, even if he failed to allege that the Commissioner was an agent for service by virtue of a statute or appointment by the defendants. And, there is in the record a showing that citation was issued and delivered to the Commissioner in July 1984, as well as a showing by affidavit that in August 1984, a "process" was served on that same official in the present cause, from which one may reasonably presume that the process was a citation. Under this theory, Fish would have us conclude that the record shows jurisdiction over the defendants even if it fails to show

strict compliance with all the requirements of any particular statute.

■ We reject the conclusion and the theory. We can think of nothing more at variance with the affirmative-showing and strict-compliance requirements enunciated in *McKanna v. Edgar, supra,* and *Whitney v. L & L Realty Corp., supra,* and the rule against such presumptions as laid down in the former decision. The theory is nothing more than a direct attack upon these decisions, which are deprived of all meaning if that theory is correct. These decisions require *particularity* both in pleading how a defendant is amenable to substitute service and in proving the fact of service in the statutory manner. *Whitney v. L & L Realty Corp., supra,* at 97. The requirement of particularity is not onerous and does not "cause any significant hardship to plaintiffs seeking judgments against non-residents." *Id.* at 96. It requires only ordinary care in pleading and proceeding to judgment. In any event, we are not free to depart from such decisions when, as here, they are plainly applicable.

■ Finally, it is suggested to us that the defendants had actual notice of the suit against them, but this cannot aid the judgment below because jurisdiction of the defendants' persons did not depend upon actual notice. Rather, it depended upon citation issued to the defendants and served in a manner authorized by law. Nothing short of a general appearance, failing such service or its waiver, will confer jurisdiction upon the court. *Harrell v. Mexico Cattle Co.,* 73 Tex. 612, 11 S.W. 863 (1889); *Panhandle Const. Co. v. Casey,* 66 S.W.2d 705 (Tex.Civ.App.1933, writ ref'd); *Investors Diversified Services, Inc. v. Bruner,* 366 S.W.2d 810 (Tex.Civ.App.1963, writ ref'd n.r.e.). Therefore, even if Academy and Bollinger have, as alleged by Fish, systematically and in bad faith delayed paying Fish the sums due him, that is no reason whatever to find that the trial court had jurisdiction over them. The law, including that part of it we have discussed and applied herein, applies equally and ex-actly to the good, the bad, and the indifferent.

We therefore grant the writ requested and reverse the judgment of the trial court because it is void for want of personal jurisdiction over the petitioners shown on the face of the record. The cause is remanded to the district court for further proceedings consistent with this opinion. Academy and Bollinger having now appeared to attack the judgment, they are presumed to have entered their appearance in the cause at the term of court at which our mandate shall be filed. Tex.R.Civ.P. Ann. 123.

EARL W. SMITH and CARROLL, Justices, concurring.

We concur with the result reached by the majority opinion, with the following comments. Although we agree that the record does not contain proof showing strict compliance with the conditions laid down in any statute authorizing substitute service, we are not prepared to agree that Fish's pleading was inadequate, for the reasons hereinafter stated.

### INADEQUACY OF SERVICE

The record must affirmatively show on its face strict compliance with any statute by which the court may acquire personal jurisdiction through substitute service. *Whitney v. L & L Realty Corp.,* 500 S.W.2d 94 (Tex.1983); *McKanna v. Edgar,* 388 S.W.2d 927 (Tex.1965). The record must contain proof showing compliance with any conditions set out in the statute authorizing substitute service. *Whitney v. L & L Realty Corp., supra.* The record in this case fails to demonstrate compliance with the conditions set out in any of the sections of the Insurance Code that could possibly apply: Tex.Ins.Code Ann. arts. 1.14–1 (the section specified in Fish's pleadings), 3.65, or 21.21–1 (1981).

The record shows one citation to Academy. The citation was issued July 18, received by the constable's office July 20, executed July 23 (by delivery to the Commissioner of Insurance), and filed July 25.

Article 1.14–1, Tex.Ins.Code Ann., *supra*, requires that the plaintiff's attorney must, in addition to serving process by leaving two copies "in the hands or office of the Commissioner," mail notice of service and a copy of the process to the defendant within 10 days of service on the Commissioner. The affidavit of service on Academy that appears on the record recites service on *August* 23, not *July* 23, with Fish's attorney performing the required mailing within 10 days of August 23.

Nothing appears on the record which demonstrates that Fish's attorney performed the mailing required by art. 1.14–1 within 10 days of the July 23 service on the Commissioner, the only service of citation on Academy shown in the record. The record shows that Fish's attorney did not comply with the conditions of service under art. 1.14–1 as to the July 23 service. No citation showing service on Academy on August 23 appears in the record. The citation must appear among the papers of the case. *Texas Inspection Services, Inc. v. Melville*, 616 S.W.2d 253 (Tex.Civ.App. 1981, no writ). The only forwarding of "process" (assuming that process means the citation) performed by Fish's attorney was performed in regard to a citation. If an August 23 citation was in fact served on Academy, the service does not appear on the record.

The record reveals other common defects in service as to both Academy and Bollinger under other possibly applicable sections of the Insurance Code. The affidavits of service on both Academy and Bollinger recite service on the Commissioner, with notice of service and a copy of the process served mailed to Academy and Bollinger at their "last known address." Articles 1.14–1 and 21.21–1 require mailing to a defendant at its last known "principal place of business." The recitation in the affidavit does not comply with the statutory language and will not satisfy its requirement. *See Verges v. Lomas & Nettleton*, 642 S.W.2d 820, 821–22 (Tex.App.1982, no writ) (under a similar requirement of the general long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (1964), the term "last known

address" may not be construed as the equivalent of "home or home office address" as used in the statute).

The non-compliance is even more pronounced with regard to service on the Commissioner under art. 3.66. Article 3.66 requires the Commissioner to mail the process to the home office of a company that does not have a general manager or general agent in the state. "Last known address" cannot be construed to be the equivalent of "home office." *See Verges v. Lomas & Nettleton, supra.*

## ADEQUACY OF FISH'S PLEADING

We do not agree that Fish's petition needed to allege any more than it did: Academy and Bollinger were foreign insurance companies doing business in Texas. His petition satisfied the requirement that facts be pleaded that make the defendant amenable to service under the Insurance Code. The majority opinion says that Fish's pleadings were deficient in two aspects: failing to plead whether Academy and Bollinger were authorized to do business in Texas and failing to plead whether the Commissioner was in fact or in law an authorized agent for service of process. Following this pleading requirement to its logical end would result in the conclusion that a category of insurers must exist as to which one could plead that the company was "authorized" to do business in Texas but would then be unable to show that the Commissioner was *in fact or in law* their agent for service. He could not be their agent in law because, as the majority opinion points out, the Insurance Code provision concerning authorized insurers does not designate the Commissioner their agent. Nor does the Insurance Code have the explicit language used in the Texas Business Corporation Act that makes the Secretary of State a foreign corporation's agent if that corporation has failed to appoint the Secretary. Tex.Bus.Corp.Act Ann. art. 8.10B (1980).

For the Commissioner to be a company's agent in fact, the company would have to

exercise its power of appointment. If a company failed to exercise this power of appointment, the Commissioner could not be their agent in fact. Therefore, the company would be an "authorized" insurer who could not be served under the Insurance Code. The provisions covering unauthorized insurers would not apply because the company is authorized. The provisions covering authorized insurers could not apply because the Commissioner would not be the company's agent in fact.

The Insurance Code does not contain the explicit provision that the Texas Business Corporation Act contains, making the Secretary of State the agent of a foreign corporation that has failed to exercise its power of appointment. Tex.Bus.Corp.Act Ann. art. 8.10B (1980). It does not seem reasonable, or within the intent of the Legislature, however, to create a situation where a company cannot be served under the Insurance Code. The Insurance Code requires a foreign corporation to have a certificate of authority to do business in Texas, stating that the laws of Texas have been fully complied with. Tex.Ins.Code Ann. art. 3.57 (1981).

Section 21.43(c) of the Code states that the provisions of the Code are conditions on which foreign insurance corporations are permitted to do business in Texas. Article 3.24–1, concerning the issuance of a certificate of authority to a foreign insurance company, says that "[w]hen a foreign or alien company has complied with the requirements of this Subchapter and all other requirements imposed on such company by law ... the Commissioner shall file in the office the documents delivered to him and shall issue to the company a certificate of authority to transact in this State the kind or kinds of business specified therein." Although the statutory language could be more explicit about the requirements for, and effect of, obtaining a certificate of authority, it is not clear at all that the statute requires a finding that it is possible to obtain a certificate of authority without first having appointed the Commissioner agent for service, one of the laws with which a company must comply.

The Texas Business Corporation Act anticipates the possibility of a foreign corporation obtaining a certificate of authority without exercising its power of appointment because the Act explicitly makes the Secretary of State such a corporation's agent by default. The absence of a similar provision in the Insurance Code could be interpreted as implying that it is not, or *should not be,* possible to obtain a certificate of authority without appointing the Commissioner agent for service. If it were in fact possible to obtain the certificate without such appointment, the provisions could be interpreted as meaning that the company was nevertheless *un*authorized because it had not complied with all of the laws of Texas.

The Insurance Code does not seem to prohibit a collateral attack on a company's certificate of authority based on failure to comply with some requirement of the statute. The Texas Business Corporation Act, for example, contains such a provision. Article 8.07A provides that a certificate of authority issued by the Secretary of State shall be conclusive evidence of the right of the corporation to transact business except in a proceeding by the state to revoke the certificate. The comment to the statute indicates that it was designed to prevent a collateral attack, usually attempting to impose personal liability on the members of the corporation's board, based on a ground that failure to comply with some requirement in securing the certificate has the effect of relegating the foreign corporation to the status of a partnership in regard to its transactions in Texas.

The Insurance Code can and should be read to provide that the Commissioner is the agent for process of any foreign insurance company doing business in Texas: if a company is authorized it will have appointed the Commissioner its agent for service and the Commissioner will be its agent in fact; if a company has *not* appointed the Commissioner its agent, then it *cannot* be authorized and the Commissioner is the company's agent for service as a matter of

law under the provisions controlling unauthorized insurers. Therefore, an allegation that a foreign insurance company is doing business in Texas should be sufficient to make the company amenable to service under the Insurance Code.